Ann K. Demeter, et al. [1] v. Commissioner. Demeter v. Commissioner
Docket Nos. 5493-69, 5512-69, 5513-69.
United States Tax Court
T.C. Memo 1971-209; 1971 Tax Ct. Memo LEXIS 124; 30 T.C.M. (CCH) 863; T.C.M. (RIA) 71209; August 23, 1971, Filed Gino P. Cecchi, 595 Golden Gate Ave., San Francisco, Calif., for the petitioners. Randall G. Dick, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1966 and 1967 as follows: Additions
to Tax
Under Sec.
Petitioner
Year
Deficiency
[2] 6651(a)
Ann K. Demeter
1966
$1,155.59
$288.90
Frank J. Demeter
1966
1,197.59
299.39
Frank J. and Ann Demeter
1967
638.10 864 Concessions having been made, the sole issue remaining for decision is whether the nonrecognition provisions of section 1034 apply to petitioners' sale of residential property *125 in 1966. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, Frank J. Demeter and Ann K. Demeter, filed delinquent individual income tax returns for the taxable year 1966 with the internal revenue service center at Ogden, Utah, on September 4, 1968. Petitioners filed a joint return for the taxable year 1967 with the district director of internal revenue at San Francisco, California. Petitioners' legal residence at the time of the filing of the petitions herein was in San Francisco, California. In 1950 petitioners purchased residential property in Mill Valley, California, for the price of $15,100. Petitioners used the Mill Valley property as their residence until 1952, when it was converted to rental property. Petitioners never reoccupied the Mill. Valley property as their residence thereafter. From 1952 through January 1967 petitioners rented living quarters under several leases and at various locations in San Francisco. Throughout this period petitioners voted, received mail, and sent their children to school in San Francisco. Their final lease in San Francisco *126 terminated in May 1966. Thereafter they rented on a month-to-month tenancy through January 1967. On January 27, 1967, petitioners purchased residential property in San Francisco at a cost of $41,000 and occupied this property as their residence. For the period from 1952 until May 1966 petitioners leased their Mill Valley property to a succession of three tenants. Over this period petitioners were allowed $7,260 in depreciation deductions for the house. The final tenants, who vacated the premises in May 1966, expressed a dislike of renting and offered to buy the property from petitioners for $24,000. Petitioners refused the offer. Petitioners began remodeling their Mill Valley property in June 1966. The remodeling included painting the interior and exterior of the house, removing and replacing the lawn, putting in a floor covering the kitchen and a new stair carpet, and performing general repairs. In October 1966, while petitioners were remodeling their property, Lawrence Westdahl and his wife were driving through Mill Valley looking for a house to buy. As they drove by petitioners' property they saw it, liked it, and "screeched to a stop." Westdahl strolled to the rear of the *127 house and entered the back door. Upon entering the house Westdahl encountered petitioners and offered to buy the house. Petitioners had not advertised, nor had they listed the property with a realtor, as being for sale or rent. Petitioners agreed to sell and accepted a deposit at this first meeting with Westdahl, but the price was not negotiated until a later date. The sale was closed on December 14, 1966, at the price of $29,995. Petitioners realized a gain of $18,053.80 on the sale of the Mill Valley property, computed as follows: Selling Price
$29,995.00
Less Selling Expenses 1,101.20
Amount Realized
$28,893.80
Original Cost
$15,100
Cost of Renovation 3,000
Total Cost
$18,100
Less Depreciation 7,260
Basis $10,840.00
Gain Realized on Sale $18,053.80 Petitioners claimed the applicability of section 1034 to the above facts and did not recognize any of the $18,053.80 gain in their individual income tax returns for the taxable year 1966. They each completed and attached to their respective returns a Form 2119, which is provided by the Commissioner for the purpose of reporting data pertinent to a sale or exchange of a personal residence. *128 Respondent denied section 1034 treatment and determined a deficiency based upon the amount of the gain. Opinion Petitioners contend that section 1034 [3] permits them to avoid recognizing any gain on the sale of their Mill Valley property. Respondent argues that section 1034 does not apply to the facts in this case and 865 that petitioners must recognize gain on the sale under section 1002. The applicability of section 1034 to the facts in this case rests solely on whether the Mill Valley property was petitioners' "principal *129 residence" at the time it was sold within the meaning of section 1034(a). This is essentially a question of fact to be decided in view of all the relevant facts and circumstances. Section 1.1034-1(c)(3)(i), Income Tax Regs., Richard T. Houlette, 48 T.C. 350 (1967). Petitioners clearly abandoned the Mill Valley property as a residence in 1952 and never reoccupied the property as a residence. However, petitioners argue that in 1966 they intended to return to Mill Valley and resume their residence there, but that before they could reoccupy the property they received an unsolicited offer to buy and sold the house unexpectedly. They point to the extensive remodeling and their refusal of an offer to buy in April 1966 as manifestations of their intent to return to Mill Valley. They argue that their claimed intent to reside in Mill Valley is sufficient to constitute "use" of the house as their "principal residence" within the meaning of section 1034(a). It is true that actual occupation of a house at the time of its sale is not an unrelenting requirement of section 1034. Ralph L. Trisko, 29 T.C. 515 (1957); Robert W. Aagaard, 56 T.C. 191 (1971); *130 Richard T. Houlette, supra. It is also true that the "mere fact that property is, or has been, rented is not determinative that such property is not used by the taxpayer as his principal residence." Sec. 1.1034-1(c)(3)(i), Income Tax Regs.; Ralph L. Trisko, supra; Robert W. Aagaard, supra.However, we expressed in the Houlette case our belief "that the facts and circumstances must be exceptional and unusual to permit the conclusion that a principal residence is being used by the taxpayer at the time of sale if he is not in possession thereof and occupying same at that time." See also William C. Stolk, 40 T.C. 345 (1963), affd. 326 F. 2d 760 (C.A. 2, 1964). The facts herein are not "exceptional and unusual." Petitioners voluntarily abandoned their residence in Mill Valley in 1952 and never reoccupied it as a residence thereafter. There was a 13- or 14-year hiatus before the genesis in 1966 of their claimed intention to return to Mill Valley. During this period petitioners rented out the Mill Valley property for the production of income and were allowed depreciation deductions totaling $7,260. Throughout this period *131 petitioners' "principal residence" was clearly in San Francisco, where they resided, voted, received mail, and educated their children. While none of these factors alone would dictate the outcome of this issue, they all indicate that petitioners were not using the Mill Valley property as their principal residence at the time it was sold. Another strong factor militating against allowing petitioners the benefits of section 1034 is their failure to establish an intent to resume their residence in Mill Valley. The self-serving statements of petitioner Frank Demeter were the only testimony offered to prove such an intent. His statements were effectively refuted by petitioners' own witness, Westdahl. [4] Also, petitioners' extreme readiness to sell to Westdahl, indicated by the testimony of both Demeter and Westdahl, belies petitioners' intent to use the Mill Valley house as a residence. Demeter almost immediately accepted an unsolicited, unexpected offer and received a deposit thereon, without even deciding what the sale price would be. *132 The above factors and all of the evidence combine to convince us that petitioners were not "using" the Mill Valley property as their "principal residence" at the time of its sale in December 1966. Therefore, we hold that section 1034 was inapplicable and that petitioners must recognize the gain from that sale. Decisions will be entered under Rule 50. 866 Footnotes
1. Cases of the following petitioners are consolidated herewith: Frank J. Demeter, docket No. 5512-69; and Frank J. and Ann Demeter, docket No. 5513-69.↩
2. Unless otherwise specified all statutory references are to the Internal Revenue Code of 1954.↩
3. SEC. 1034. SALE OR EXCHANGE OF RESIDENCE. (a) Nonrecognition of Gain. - If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.↩
4. Petitioners' counsel educed the following testimony from Westdahl on direct examination: Q. Could you give me some of the conversation you had with Mr. Demeter at this time? * * * Q. What did he reply, if you recall, to your question of whether it was for sale or not. A. Well, he said that * * * he was renovating it for sale and that - Q. Renovating it for sale, did you say, or - A. For sale or lease. That's the way I remember it, at that time. Q. Did he mention to you that he was doing this for his own home? * * * A. No. Q. Did he mention at all the fact that it wasn't for sale? A. No, he said he'd be willing to sell it or lease it.↩