NELSON C. ELAM AND ADELE B. ELAM, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2861–70. Filed May 8, 1972.

*William Waller* and *William E. Martin*, for the petitioners.
*Jack D. Yarbrough*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency of $11,328.49 in the income tax of petitioners for the calendar year 1966, which results from his increasing gross income by the amount of gain petitioners realized on the sale of their former principal residence. The sole issue is whether section 1034, I.R.C. 1954,[1] requires nonrecognition of part of the gain and to what extent if any the purchase price of a new residence and the costs petitioners incurred in constructing a new dwelling house should be taken into account in computing the amount of gain currently taxable.

#### FINDINGS OF FACT

Nelson C. Elam and his wife, Adele B. Elam, filed a joint return for the taxable year with the district director of internal revenue at Nashville, Tenn. At the time of the filing of the petition they resided in Franklin, Tenn.

On August 3, 1966, they sold a 110-acre farm where they had made their home since 1941. One-third of the sales price, $93,333.33, is allocable to their personal residence there, which included 17 surrounding acres. The gain attributable to the one-third is $45,314. Petitioners purchased new property earlier on March 3, 1966, on which they planned to make their new home. They continued to live in the old residence for 6 months after it was sold, the first 4 months rent-free by prior arrangement with the buyer.

Petitioners planned to build a guesthouse as well as a main dwelling house on the new property. Construction of the guesthouse was begun in October 1966 and carried out on an expedited basis so that they could quit their former residence at the earliest date. The guest-

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

house was completed in February 1967 and petitioners moved into it at that time. Some of the furnishings from the old residence could not be accommodated by the guesthouse, and the overflow was stored in a cabin on the new property until the move into the main house could be made.

Petitioners next turned their attention to the main house, which was begun in October 1966 and not completed and occupied until August 1, 1968, nearly 24 months after the sale of the former residence.

By February 1, 1968, petitioners had incurred the following costs in connection with the purchase of the new property and appurtenances and in connection with the construction of the main house and guesthouse:

| | |
|---|---|
| Allocable land costs | $3,196.42 |
| Guesthouse | 19,373.22 |
| Outbuildings | 2,103.29 |
| Main house (incomplete) | 58,603.84 |
| | 83,276.77 |

Petitioners declared no part of the gain on the sale of their prior residence in their return for the 1966 taxable year but they now concede that at least $10,056.56 of the gain, being the difference between the amount realized and $83,276.77, is reportable.

### OPINION

Section 1034(a) may require nonrecognition of part or all of the gain realized on the sale of the taxpayer's principal residence if the taxpayer purchases, under statutory time limitations, a new principal residence. Section 1034(c)(2) makes clear that the new principal residence does not have to be an existing structure at the time of the sale of the old residence, and section 1034(c)(5) allows 18 months from the date of sale for the construction of the new residence provided that work is started before the expiration of 1 year after that date. Petitioners began construction on the main house early enough, and thus the question remains what constituted their principal residence in early February 1967, 18 months after the sale of their prior residence.

On brief the parties share the view that the guesthouse, the main house, the outbuilding, the parcel on which they were situate, and any other appurtenances constituting real property should be taken together as constituting petitioners' new principal residence. On that basis the petitioners contend that as they occupied the guesthouse within the 18-month period they are entitled to nonrecognition treatment with respect to all the real estate involved, and that the construction costs of the main house that are chargeable to capital account and that were incurred prior to February 1967 are includable

in the "cost of purchasing the new residence" for purposes of section 1034(a). The Commissioner draws the opposite conclusion, that since the main house was still under construction in February 1967 the functional unit of the main house, guesthouse, etc., could not be deemed to have been put into use as a residence by that time, and consequently that petitioners must recognize the full amount of the gain realized on the sale of their old residence. However, the Commissioner adverts to the possibility that the guesthouse only, which petitioners were occupying at the end of the 18-month deadline, constituted a new principal residence.

We agree with the view last expressed, and hold that petitioners must recognize gain on the sale of their old residence only to the extent that the proceeds thereof (as defined by section 1034(b)) exceed the purchase price of the new property plus any construction or improvement costs other than the cost of the main house.

Section 1034 manifestly is not designed to require the offsetting of the adjusted sales price of the old residence by the construction costs of the new residence regardless of the time incurred, which could be perhaps several years after the date of sale. Rather, the plan of the statute is to accord tax deferral only if the proceeds of sale can be reinvested in the new residence within a relatively short period of time—generally 1 year. Congress has provided an additional 6-month grace period if the taxpayer builds or reconstructs the new residence.

The cases further tell us that the event we are to look for during the relevant period is the placing of the new residence into *use* as a residence. *John F. Bayley*, 35 T.C. 288, 295 (1960); *United States* v. *Sheahan*, 323 F. 2d 383 (C.A. 5, 1963); *William C. Stolk*, 40 T.C. 345 (1963), affirmed per curiam 326 F. 2d 760 (C.A. 2, 1964). The statute provides the additional precision that if more than one residence is purchased, the one last used as a principal residence during the period is deemed the statutory new residence. Sec. 1034(c)(4) and (5). The facts reveal that petitioners were using the guesthouse as a residence by February 1967. Whether or not the main house would have constituted a second principal residence had it been completed and occupied by that date is a question we do not have to decide today.

Petitioners make much of the statement in the legislative proceedings that the term "residence" includes "the environs and outbuildings relating to the dwelling." [2] As we have adumbrated above, they suggest that the uncompleted main house must be considered part of the residence and that the costs that went into constructing it by the end of the 18-month period should be counted toward the nonrecognition of gain.

---

[2] Joint Committee Staff Summary of Provisions of the Revenue Act of 1951, 1951-2 C.B. 310.

The legislative statement must be placed in the context of the residential-use requirement found repeatedly in the language of section 1034. It says only that outbuildings and servient structures, indeed the unimproved land constituting the parcel on which a dwelling house is situate, may be classified logically and functionally as part of a taxpayer's residence. However, the petitioners' main house possessed no residential utility before the time the statutory period expired. In this case the facts show that the new main house residence was simply not put into use as a residence before the prescribed time limit. It is of no avail that the main house later achieved its intended use as the dominant structure of the residence.

*Decision will be entered under Rule 50.*